UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

CHARLES EDWARD STEPHENS,      )
                              )
        Plaintiff,            )
                              )
v.                            )        No.:   3:18-CV-300-TAV-HBG
                              )
UNION COUNTY, TENNESSEE,      )
BILLY BREEDING, JESSE ELLIS,  )
BRUCE ELLIS, and              )
JOHN AND JANE DOES 1-10,      )
                              )
        Defendants.           )

## MEMORANDUM OPINION

This is a complaint for violation of 42 U.S.C. § 1983. Plaintiff, a former prisoner

at the Union County Jail, asserts that Defendants did not provide him adequate medical

care in the jail, that Union County failed to train and/or supervise its correctional officers,

that Defendants failed to protect him from a substantial risk of serious injury, and that the

individual Defendants are liable for outrageous conduct/intentional infliction of emotional

distress. Now before the Court are Defendants' motions for summary judgment [Doc. 23]

and for leave to file excess pages [Doc. 24]. Plaintiff responded in opposition to the motion

for summary judgment[1] [Doc. 26], and Defendants replied [Doc. 27]. In light of Plaintiff's

---

[1] In his response, Plaintiff states "that this case has just begun" and that he has not yet taken the depositions of various medical providers or the inmates with whom he was housed, and he therefore requests that the Court deny Defendants' motion for summary judgment as premature [Doc. 26 p. 21–24]. However, the deadline for the parties to complete discovery was October 22, 2019, and the deadline for dispositive motions was November 19, 2019 [Doc. 13 p. 1–2], which is the same date on which Defendants filed their motion for summary judgment [Doc. 23]. Plaintiff has never sought extension of either of these deadlines and failed to do so even after Defendants pointed out these deadlines in their reply to Plaintiff's response [Doc. 27 p. 8–10]. Plaintiff likewise has not filed an affidavit or declaration stating that he cannot present facts essential to his opposition to the motion for summary judgment pursuant to Rule 56(d) of the Federal Rules of Civil Procedure despite Defendants pointing out that he had not done so in their reply [*Id.* at 9]. Accordingly, the Court will not delay ruling on Defendants' motion for summary judgment.

lack of opposition, Defendants' motions for leave to file excess pages [Doc. 24] will be **GRANTED**. Also, for the reasons set forth below, Defendants' motion for summary judgment [Doc. 23] will be **GRANTED**.

## I.   STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, the court must draw all reasonable inferences in favor of the nonmoving party. *McLean v. 988011 Ontario Ltd*, 224 F.3d 797, 800 (6th Cir. 2000). As such, the moving party has the burden of conclusively showing the lack of any genuine issue of material fact. *Smith v. Hudson*, 600 F.2d 60, 63 (6th Cir. 1979). To successfully oppose a motion for summary judgment, "the non-moving party . . . must present sufficient evidence from which a jury could reasonably find for him." *Jones v. Muskegon Cty.*, 625 F.3d 935, 940 (6th Cir. 2010).

## II.   BACKGROUND

In May 2016, several months after he had a motorcycle accident, an ambulance took Plaintiff to the hospital at the University of Tennessee ("UT Hospital") due to pain in his left leg. At UT Hospital, Plaintiff was diagnosed with a methicillin-resistant

staphylococcus aureus ("MRSA") infection [Doc. 1 p. 10[2]; Doc. 23-1 p. 3–4] and underwent surgery to clean the infection from his thigh bone [Doc. 1 p. 10]. Several days later, Plaintiff checked himself out of the hospital against medical advice and went home with a peripherally inserted central catheter so that he could receive intravenous antibiotics [*Id.*; Doc. 23-1 p. 5]. While he was home after this hospitalization, Plaintiff broke his left leg [Doc. 1 p. 10]. He returned to UT hospital and was treated by the same doctor who had performed the surgery related to his MRSA infection [*Id.*]. The doctor placed a rod and screws in Plaintiff's left thigh before releasing him [*Id.* at 10–11].

In spring of 2017, Plaintiff began experiencing pain in his left thigh, and a bump began to form on the outside of his left thigh in early July [*Id.* at 11]. Plaintiff saw a doctor who scheduled him for an x-ray on July 25, 2017 [*Id.*]. However, officers of the Union County Sheriff's Office arrested Plaintiff on July 24, 2017 [*Id.*].

---

[2] In their reply, Defendants assert that Plaintiff may not rely on the statements in his complaint to oppose their motion for summary judgment [Doc. 27 p. 2–7]. However, Plaintiff signed his notarized complaint and thereby "ma[de] oath" that the statements therein "are true to the best of his knowledge, information, and belief" [Doc. 1 p. 31]. Thus, the Court will treat the complaint as an affidavit to the extent that it will consider whether the non-conclusory allegations therein establish that a genuine issue of material fact remains in this case. Fed. R. Civ. P. 56(c)(1)(A), (c)(4); *Alexander v. Caresource*, 576 F.3d 551, 560 (6th Cir. 2009) (providing that "[c]onclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment).

Plaintiff also filed an affidavit with his response to the motion for summary judgment [Doc. 26-1] that is substantively consistent with his notarized complaint regarding the events during his incarceration [Doc. 1]. While this affidavit presents these events in a more sequential manner than Plaintiff's complaint or deposition testimony did, it is also much less detailed. Moreover, Plaintiff relies on his complaint, medical records, and jail records and the parties' deposition testimony to support the relevant factual assertions in his response in opposition to Defendants' motion for summary judgment [Doc. 26].

Thus, the Court will endeavor to present a sequential summary of the relevant events underlying Plaintiff's complaint based on all relevant proof in the record, including Plaintiff's sworn filings. In doing so, the Court will make all reasonable inferences in favor of Plaintiff.

3

Plaintiff states that, at the time of this arrest, he told "jailers" that he needed to go to the doctor for his leg and had an x-ray scheduled for the next day and explained "the serious nature of his illness" [*Id.*].  But these unnamed officers "refused to acknowledge this information" [*Id.*].

However, Plaintiff's July 24, 2017 Union County Sheriff's Office Medical Questionnaire, which states that it was completed by Defendant Officer Bruce Ellis and which Plaintiff signed, indicates that Plaintiff disclosed that he was taking medications for blood pressure and reflux and had a history of seizures, but responded negatively to all of the other questions, including the questions asking whether he had a contagious infection or was under the care of a doctor [Doc. 23-1 p. 9–10[3]; Doc. 23-9 p. 2].

Plaintiff's testimony at his deposition regarding the completion of this medical questionnaire was unclear.  Specifically, Plaintiff first testified that he told officers about the medications he was taking for blood pressure and acid reflux when he was booked into the jail but stated that he did not understand the questions on the medical questionnaire form, including the question asking whether he was under the care of a doctor [Doc. 23-1 p. 8].  Nevertheless, Plaintiff then confirmed that Defendant Officer Bruce Ellis had asked him the questions on the form and indicated that he believed that he had told Defendant Officer Bruce Ellis about his MRSA [*Id.* at 10].  Plaintiff subsequently testified that he did not remember who booked him in or whether Defendant Officer Bruce Ellis asked him the

---

[3]  The exhibit to Defendants' motion for summary judgment containing Plaintiff's deposition was filed with at least two pages out of order.  Specifically, pages 9 and 10 of this exhibit were transposed [Doc. 23-1 p. 9–10].

4

questions on the form, including the question asking whether he had a contagious infection [*Id.* at 17–18]. He also admitted that he did not "know of any document or testimony" that would contradict the indication on the form that he did not tell Defendant Officer Bruce Ellis that he had a contagious infection and stated that the answer to the question of whether he was under a doctor's care should have been "yes" [*Id.* at 10].

However, Plaintiff next testified that no one read him the questions on the medical questionnaire form and he could not read the form [*Id.*]. He also specifically denied that Defendant Officer Bruce Ellis had asked him the medical questions on the form, stated that Defendant Bruce Ellis used his previous booking sheet to complete the July 24, 2017 medical questionnaire, and explained that he had actually told the nurse about his MRSA two days later [*Id.*].

Notably, however, Plaintiff's medical questionnaire from his previous booking into the Union County Jail is substantially different from the medical questionnaire from his booking on July 24, 3017[4] [Doc. 23-9 p. 1–2]. Also, despite Plaintiff's testimony that he told the nurse about his MRSA soon after his booking in to the jail, Plaintiff's medical staff receiving form from July 25, 2017, reflects that Plaintiff indicated at that time that he was under the care of Dr. Max Money, but had no communicable disease [Doc. 23-11 p. 1].

---

[4] Specifically, although both forms indicate that Plaintiff was taking medication for his blood pressure and acid reflux, Plaintiff's July 2017 booking medical questionnaire only states that he also had a history of seizures, while the February 2017 booking medical questionnaire also indicates that Plaintiff was under the care of a doctor, had recently been hospitalized, had a latex allergy, had a history of diabetes, and had a physical handicap due to leg surgery [Doc. 23-9 p. 1–2].

In his complaint, Plaintiff asserts that as he remained in the Union County Jail, the lump on his thigh continued to grow and cause him pain but jail officers refused Plaintiff's requests for medical care [Doc. 1 p. 12]. On August 5, 2017, Plaintiff completed an inmate request form in which he indicated that he had asked for three "lawyer call[]s," had a softball-sized knot in the area where he had hip surgery due to an infection, and had asked to be taken to hospital [Doc. 23-12 p. 1]. Plaintiff received an x-ray on the floor of the nurse's office[5] that same day and the results showed "moderate osteoarthritis" [Doc. 23-13 p. 1].

Three days later, on August 8, 2017, the lump on Plaintiff's thigh burst open, causing blood and pus to run down his leg [Doc. 1 p. 12]. However, officers did not provide Plaintiff with a clean pair of pants until the next day, Plaintiff did not have any soap or water to clean his wound, and Plaintiff continued working on the work crew after the lump burst without ever asking not to do so [*Id.* at 11–13]. Moreover, when a nurse told a jail officer that Plaintiff needed to go to a doctor or the hospital after this happened, the correctional officer "refused" by stating that Defendant Jail Administrator "Jesse Ellis will not approve that" [*Id.* at 13]. Nevertheless, the jail nurse tried to help Plaintiff "as much as he could" [*Id.* at 12].

On August 14, 2017, Plaintiff had a medical visit that the jail medical providers described as a follow-up visit for a spider bite, though Plaintiff testified that he "kept telling" the nurse and others that he did not have a spider bite [Doc. 23-1 p. 14; Doc. 23-1

---

[5] Plaintiff admits that the completion of this x-ray on the floor of the nurse's office did not cause him any injury [Doc. 23-1 p. 14].

p. 26; Doc. 23-16 p. 1]. At this visit, the jail doctor prescribed Plaintiff the antibiotic Clindamycin [Doc. 23-15 p. 1]. On or about August 24, 2017, after he had taken his prescribed antibiotic for ten days, Plaintiff heard the jail nurse tell Defendant Jail Administrator Jesse Ellis that Plaintiff needed to go to the hospital, but Defendant Jail Administrator Jesse Ellis responded "[f*]ck him, I ain't paying no medical bills" [Doc. 1 p. 12; Doc. 23-1 p. 11, 15].

According to Plaintiff's medical records, on August 28, 2017, at 10:00 a.m., Plaintiff saw a nurse and a doctor regarding his left "hip drainage," and the medical providers noted that they would "continue to monitor" Plaintiff for adverse reactions [Doc. 23-16 p. 1]. However, Plaintiff again presented to medical staff for a sick call at 3:00 p.m. that same day, at which point the nurse called the doctor, who indicated that Plaintiff should be sent to the emergency room for a "possible lance [and] drain" [Doc. 23-1 p. 26; Doc. 23-16 p. 1].

In his complaint, Plaintiff states that he was scheduled to go to court on August 28, 2017, but jail officers told him that he had to choose between going to court or going to the hospital and that if he chose to go to the hospital, he would miss court and have to get a new court date [Doc. 1 p. 13.]. Plaintiff further states that he chose to go to the doctor, but officers nevertheless took him to court before taking him to the hospital [*Id.*].

Defendant Sheriff Breeding became aware of Plaintiff's transfer to a hospital through a phone call from Defendant Jail Administrator Jesse Ellis [Doc. 23-4 p. 3–4].

When Plaintiff arrived at the hospital on August 28, 2017, he heard his treating physician, Dr. Rose, instruct his accompanying officers to take him back to the doctor who had operated on his leg at UT Hospital for treatment, but officers responded that Defendant Jail Administrator Jesse Ellis would not pay for that [*Id.*; Doc. 23-1 p. 16]. Dr. Rose then told the officers that all he could do was clean Plaintiff's wound, pack the wound with gauze, and provide Plaintiff with antibiotics, and instructed the officers that the wound should be cleaned and the dressing should be changed every day upon Plaintiff's return to the jail [Doc. 1 p. 13; Doc. 23-17 p. 1]. He also stated that Plaintiff would need a follow-up appointment with his doctor at UT Hospital in one week [Doc. 1 p. 13; Doc. 23-17 p. 1].

Upon Plaintiff's return to the jail, he was placed in a one-man cell [Doc. 1 p. 14]. The jail nurse saw Plaintiff every business day but did not see him over the next long weekend [Doc. 23-1 p. 25, 27]. However, during this time, Plaintiff had access to the extra supplies that Dr. Rose had given him and could change his dressing, but could not repack it, and jail officers therefore did not allow Plaintiff to shower [Doc. 23-1 p. 25, 27].

When Plaintiff saw the jail nurse on September 4, 2017, the nurse indicated that Plaintiff needed a furlough to have surgery and needed to see a doctor [Doc. 23-18 p. 1]. However, Plaintiff states that he contacted a criminal attorney who was able to secure a medical furlough for Plaintiff that the judge signed on September 13, 2017, and the court entered on September 14, 2017, at which time Plaintiff was released [Doc. 26-1 p. 1; Doc. 23-1 p. 20]. As soon as Plaintiff was released, his mother took him to UT Hospital

8

where he had surgery to remove the rod in his right thigh on September 15, 2017 [Doc. 1 p. 14; Doc. 26-1 p. 1].

Plaintiff acknowledged at his deposition that he would have had to have the same medical treatment he received after his medical furlough even if jail officials had not delayed in allowing him to obtain proper medical treatment, but stated that he would not have had to endure the treatment from Dr. Rose if jail officials had obtained treatment for him earlier [Doc. 23-1 p. 21].  Plaintiff then agreed with counsel that he thought that the treatment Dr. Rose provided him should have been done at UT Hospital [*Id.* at 28–29].

Both Defendants Sherriff Breeding and Jail Administrator Jesse Ellis testified that the Union County Sheriff's Office has a policy providing that its prisoners will receive "treatment for all legitimate complaints," that prisoners with communicable diseases who do not require hospitalization should be separated from the general population, and that a prisoner who needs "treatment that is not available at the facility will be transported to a medical center" [*Id.* at 11; Doc. 23-5 p. 5; Doc. 23-6 p. 7].

Additionally, Defendants Sheriff Breeding and Jail Administrator Jesse Ellis testified that jail officials refer all medical issues to Southern Health Partners, and that this entity's nurses would be responsible for scheduling follow up appointments for prisoners, including Plaintiff, and ensuring compliance with orders from outside doctors, including the UT Hospital doctor's order stating that Plaintiff's dressing should be changed every day [Doc. 23-4 p. 3–4, 11–12; Doc. 23-5 p. 4–7].  Defendant Jail Administrator Jesse Ellis further indicated that jail nurses do not need his permission to transport an inmate to a

hospital and stated that many times he does not know that nurses have done so until afterwards [Doc. 23-5 p. 10]. Defendants Sheriff Breeding and Jail Administrator Jesse Ellis also testified that correctional officers may also contact the nurse or call an ambulance if they believe that an inmate needs medical attention [*Id.* at 9; Doc. 23-4 p. 6].

Defendant Sheriff Breeding additionally testified that a jail administrator would not have the authority to override a recommendation from medical staff [Doc. 23-4 p. 3–4]. Defendant Jail Administrator Jesse Ellis similarly testified that he did not have any medical training or the authority to override a decision from the medical staff and that he had never stated that he would not pay for medical care for an inmate [Doc. 23-5 p. 2, 5, 8]. Defendant Bruce Ellis likewise testified that he did not believe that Defendant Jail Administrator Jesse Ellis had the authority to override a nurse's directive [Doc. 23-8 p. 3].

Defendant Sheriff Breeding further testified that to be employed with the Union County Sheriff's Office, officers take a forty-hour certification course through the Tennessee Correctional Institute ("TCI") within their first year and must recertify each year, and that any officer failing to do so would be terminated upon that failure being reported to him [*Id.* at 8, 13].

In his complaint, Plaintiff asserts the following claims:

1.  Failure to provide adequate medical care against the individual Defendants;
2.  Failure to train and supervise against the individual Defendants;
3.  Failure to protect against the individual Defendants;
4.  Failure to provide adequate medical care against Defendant Union County;
5.  Failure to train and supervise and ratification of unconstitutional conduct against Defendant Union County;
6.  Violation of the Eighth Amendment against Union County arising out of his placement in a one-man cell; and

10

7. Outrageous conduct/intentional infliction of emotional distress.

[Doc. 1 p. 17–29].

## III. ANALYSIS

### A. Failure to Provide Adequate Medical Care

In their motion for summary judgment, the individual Defendants assert that they are entitled to judgment as a matter of law as to Plaintiff's claim against them for failure to provide adequate medical care because the medical care that Plaintiff received was not "so woefully inadequate as to amount to no care at all," and they cannot be liable under § 1983 for any denial of adequate medical care to Plaintiff in the complaint because they relied on their medical staff's expertise [Doc. 25 p. 11–16]. Defendants also rely on Plaintiff's jail medical questionnaire from July 24, 2017, to assert that Plaintiff did not tell the officer who booked Plaintiff into the jail, Defendant Officer Bruce Ellis, about his MRSA infection [*Id.* at 14]. Defendant Union County also asserts that Plaintiff has failed to set forth proof that it has a custom or policy of denying prisoners medical care such that it may be liable for such a claim. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (holding that a governmental entity may be liable under § 1983 only where its official custom or policy causes a constitutional rights violation).

In his response, Plaintiff alleges that officers in the jail failed to provide him medical care throughout his incarceration in the Union County Jail even though he told officers at the time that he was booked into the Union County Jail on July 24, 2017, that he had an x-ray scheduled for the next day, told the jail medical staff that he had MRSA, had an obvious need for medical care, and repeatedly told the officers that he needed to see a doctor for his

leg from July 24 through August 28, 2017 [Doc. 26 p. 6–11].[6]  Plaintiff also alleges that

although Defendant Jail Administrator Jesse Ellis and others testified that a jail

administrator could not override a medical provider's decision regarding a prisoner's need

for medical care, he heard Defendant Jail Administrator Jesse Ellis state "[f*]ck him, I ain't

paying no medical bills" when a medical provider stated that Plaintiff needed to go to the

hospital [*Id.* at 10].  Additionally, Plaintiff claims that Union County correctional officers

have a custom of ignoring inmate requests for medical care and that Defendant Union

County was aware of such a custom because other inmates filed "prior cases" against it,

although Plaintiff states the cases on which he relies were dismissed because the inmate

plaintiffs did not have counsel and provides no identifying information for these cases

[Doc. 26 p. 19].

---

[6]  Throughout his response in opposition to Defendants' motion for summary judgment, Plaintiff
relies on acts and omissions of Union County Jail correctional officers.  However, neither the individual
Defendants nor Defendant Union County may be liable under § 1983 based on a theory of respondeat
superior.  *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must
allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a
claim upon which relief may be granted); *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008) (providing
that a jail official may not be liable under § 1983 for the acts of his subordinates under a theory of respondeat
superior); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (providing that a municipality may not
be liable for claims under § 1983 unless its custom or policy caused the underlying constitutional violation).

Moreover, while Plaintiff also sued John Doe Defendants for the claims in his complaint, he did
not amend his complaint to name these individuals prior to the expiration of the statute of limitations and
nothing in the record suggests that these unnamed individuals knew of Plaintiff's claims against them within
the statute of limitations period, which passed before the named Defendants filed their answer to Plaintiff's
complaint on September 27, 2018 [Doc. 8].  Fed. R. Civ. P. 15(c).  Accordingly, Plaintiff's claims against
the John Doe Defendants will be **DISMISSED**.  *See Cross v. City of Detroit*, No. 06-11825, 2008 WL
2858407, at *1 (E.D. Mich. July 23, 2008) (dismissing sua sponte and with prejudice the plaintiff's
claim for a civil rights violation against a police officer the plaintiff had named as John Doe because
the plaintiff "did not seek leave to amend the Complaint to name the John Doe defendant prior to the
expiration of the statute of limitations"); *Smith v. City of Akron*, 476 F. App'x 67, 69 (6th Cir. 2012)
(holding that Rule 15(c) of the Federal Rules of Civil Procedure offers no remedy when the plaintiff
"simply did not know whom to sue or opted not to find out within the limitations period").

12

A prison authority's deliberate indifference to an inmate's serious medical need violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). Prison medical personnel or officials may be deliberately indifferent to a prisoner's serious medical needs "in their response to a prisoner's needs" or by "interfer[ing] with treatment once prescribed." *Id.* at 104–05. Establishing a deprivation of a federal right in the Eighth Amendment medical context requires evidence that acts or omissions of an individual operating under the color of state law were "sufficiently harmful to evidence deliberate indifference to serious medical needs." *Id.* at 106. Deliberate indifference is equivalent to "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 839 (1994). Under this standard, a state actor may not be liable under § 1983 unless he (1) knew that the inmate faced a substantial risk of serious harm; and (2) disregarded that risk by failing to take reasonable measures to abate it. *Id.* at 847.

### 1. Defendant Sheriff Breeding

Nothing in the record suggests that Defendant Sheriff Breeding was involved in any decisions regarding Plaintiff's medical care during the relevant time period underlying the complaint. Accordingly, no reasonable juror could find that Defendant Sheriff Breeding was deliberately indifferent to Plaintiff's serious medical needs, and he is therefore entitled to summary judgment on this claim.

### 2. Defendant Officer Bruce Ellis

While Plaintiff generally alleges that all of the individual Defendants knew and/or should have recognized that he had a serious medical condition, he does not specify how or when Defendant Officer Bruce Ellis may have become aware of this condition. Further,

13

while Plaintiff's medical questionnaire from his booking into the Union County Jail on July 24, 2017, indicates that Defendant Officer Bruce Ellis completed it and Plaintiff indicated at one point in his deposition that he "believe[d]" that he had told this Defendant about his MRSA during his booking into the jail, this form is devoid of any indication that Plaintiff did so. Moreover, Plaintiff also testified that he did not remember who booked him into the Union County Jail, that he did not remember Defendant Officer Bruce Ellis asking him the questions on his medical questionnaire form, that he did not have any document or testimony to dispute the indication on the medical questionnaire form that he did not tell Defendant Officer Bruce Ellis that he had a contagious condition at the time of his booking, and that he told the nurse, rather than Defendant Officer Bruce Ellis, about his MRSA two (2) days after he was booked into the jail.

Most notably, as set forth above, Defendants rely on Plaintiff's July 24, 2017 Union County Jail medical questionnaire to establish that Plaintiff did not tell them about his MRSA and, in his response, Plaintiff fails to cite any proof in the record that Defendant Officer Bruce Ellis had knowledge of his MRSA, but instead generally states that he told officers, jail personnel, and medical staff about the lump on his thigh and his x-ray appointment [Doc. 26 p. 3, 7, 9].

Thus, even making all reasonable inferences in Plaintiff's favor, he has failed to set forth any evidence from which a reasonable jury could find that Defendant Officer Bruce Ellis was deliberately indifferent to his serious medical need. *See Anderson v. Hobby Lobby, Inc.*, 477 U.S. 242, 252 (1986) (providing that "[t]he mere existence of a scintilla

14

of evidence in support of the plaintiff's position will be insufficient [to successfully oppose a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the plaintiff"). As such, Defendant Officer Bruce Ellis is entitled to summary judgment for this claim.

### 3. Defendant Jail Administrator Jesse Ellis

As forth above, Plaintiff alleges in his notarized complaint that on August 24, 2017, a medical provider told Defendant Jail Administrator Jesse Ellis that Plaintiff needed to go to the hospital, but this Defendant responded "[f*]ck him, I ain't paying no medical bills." However, in their memorandum in support of their motion for summary judgment, Defendants cite proof in the record that jail officials deferred decisions regarding prisoner medical care to Southern Health Partners [Doc. 25 p. 11–16]. Defendants also note that it is undisputed that medical providers sent Plaintiff to the hospital on August 28, 2017 [*Id.* at 16]. Thus, Defendants assert that they cannot be liable under § 1983 for any denial of proper medical care to Plaintiff.

In his response, Plaintiff cites Defendant Jail Administrator Jesse Ellis's statement on August 24, 2017, to assert that this Defendant did override medical provider decisions [Doc. 26 p. 8–11]. However, Plaintiff does not allege, and nothing in the record suggests, that the jail medical provider stated that that Plaintiff needed to be sent to the hospital immediately on August 24, 2017. Also, Plaintiff does not set forth any proof that jail medical providers did not send Plaintiff to the hospital until August 28, 2017, because of this statement, and, as Defendants point out, the proof showed that jail officials deferred

such decisions to the medical providers. Moreover, Plaintiff's medical records establish that jail medical providers did not immediately send him to the hospital when he went back to see them on August 28, 2017, but rather first decided to monitor Plaintiff before ultimately deciding to send him to the hospital in the afternoon when he returned again. Nothing in the record suggests that Defendant Jail Administrator Jesse Ellis was involved in jail medical providers' decision to send Plaintiff to the hospital at that time, and Defendant Jail Administrator Jesse Ellis's testimony indicated that the Union County Jail nurses could and did send inmates for outside medical care without first consulting him.

Thus, even if the Court makes the reasonable inference in Plaintiff's favor that Defendant Jail Administrator Jesse Ellis made the statement "[f*]ck him, I ain't paying no medical bills" on August 24, 2017 when a jail medical provider stated that Plaintiff needed to go to the hospital, Plaintiff has failed to cite any proof in the record, such as testimony from a jail medical provider, from which a reasonable jury could find that Defendant Jail Administrator Jesse Ellis's statement delayed Plaintiff's receipt of medical care from an outside medical provider. In other words, Defendants have met their burden to establish that the Union County Jail nurses could have sent Plaintiff to the hospital on August 24, 2017, despite Defendant Jail Administrator Jesse Ellis stating that he was unwilling to pay Plaintiff's medical bills and Plaintiff has failed to come forward with any evidence that this statement delayed any medical care for him.

Notably, had Plaintiff presented any evidence from which a reasonable juror could find that Defendant Jail Administrator Jesse Ellis's statement intentionally caused the four-

day delay in Plaintiff going to the hospital, it is almost certain that this claim would proceed to trial. *Estelle*, 429 U.S. at 104–05 (holding that "prison guards . . . intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed" violates the Eighth Amendment). However, he has failed to do so, and Defendant Jail Administrator Jesse Ellis is therefore entitled to summary judgment on this claim.

### 4. Defendant Union County

First, Defendant Union County may be liable for the alleged denials of medical care to Plaintiff underlying the complaint only if its custom or policy caused any of those denials. *Monell*, 436 U.S. at 691 (holding that a governmental entity may be liable under § 1983 only where its official custom or policy causes a constitutional rights violation). Moreover, to succeed on such claims, plaintiffs generally must establish that "the municipality was aware of prior unconstitutional actions of its employees and failed to respond." *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997).

In his complaint, Plaintiff alleges that Defendant Union County is liable under § 1983 for the denial of medical care to him at Union County Jail because it has a history of failing to provide inmates adequate medical care [Doc. 1 p. 23]. In support of this statement, Plaintiff states that at least five (5) other prisoners have filed lawsuits against Defendant Union County [*Id.*].

However, in their memorandum in support of their motion for summary judgment, Defendants point out that Plaintiff has not provided the case numbers or any of the facts

underlying the lawsuits on which he relies and therefore assert that he has no proof to support this claim [Doc. 25 p. 25–26]. In his response in opposition to this motion, Plaintiff again asserts that the correctional officers at Union County Jail have a custom of ignoring inmate requests for medical care and that other inmates have filed lawsuits against Union County [Doc. 26 p. 19]. However, Plaintiff again does not cite any cases to support this assertion, but instead acknowledges that the cases on which he relies were dismissed because the inmates did not have legal counsel [*Id.*].

Without Plaintiff providing the dates and relevant facts of underlying the lawsuits on which he relies to support this claim, no reasonable juror could find that these lawsuits put Defendant Union County on notice of its officers' alleged custom of failing to provide inmates medical care which Plaintiff alleges caused a denial of his constitutional rights. Notably, in the section of his complaint setting forth this claim, Plaintiff alleges that Defendant "Union County has a history of failing to provide adequate medical care" to the inmates in its jail, and that "[t]here are at least five cases on record in the District Court" [Doc. 1 p. 23]. Similarly, Plaintiff states in his response that the lawsuits on which he relies show that "inmates had a grievance with the medical care they received while in custody" of Defendant Union County [Doc. 26 p. 19].

However, inmates complaining that they did not receive proper medical care in the Union County Jail would not necessarily have put Defendant Union County on notice that its correctional officers were not responding to inmate requests for medical treatment, which is what Plaintiff asserts. Rather, claims asserting the inadequacy of jail medical care

18

could allege that medical providers, rather than correctional officers, acted improperly, and such claims would not have put Defendant Union County on notice of any unconstitutional custom of its officers failing to obtain medical care for inmates. Moreover, as Plaintiff provides no dates for these prior lawsuits, they could have been filed so long before this lawsuit that they would have no relevance.

Thus, Plaintiff has not set forth facts from which a reasonable juror could find that the inmate lawsuits on which he relies would have put Defendant Union County on notice that its correctional officers had a custom of failing to respond to inmate requests for medical care that was the moving force behind any violation of his constitutional rights. Defendant Union County is therefore entitled to summary judgment for this claim.

## B. Failure to Train and Supervise

Plaintiff also asserts claims for failure to train and/or supervise against all Defendants. However, the individual Defendants may not be liable under § 1983 unless they authorized, approved, acquiesced, or directly participated in a constitutional violation. *Harvey v. Campbell Cty.*, 453 F. App'x. 557, 563 (6th Cir. 2011) (citations omitted). Thus, Plaintiff's claims against the individual Defendants for failure to train or supervise improperly conflate individual liability with municipal liability, and they are therefore properly construed as against the municipality. *Id.*

A municipality may be liable for failing to train or supervise its officers under § 1983 "where the failure to train amounts to deliberate indifference to the rights of person with whom the police come into contact." *Canton v. City of Harris*, 489 U.S. 378, 388

19

(1989). To establish such a claim, a plaintiff must demonstrate that: (1) the officer's training was inadequate to prepare him for the tasks of his position; (2) that the inadequacy continued due to deliberate indifference on the part of the municipality; and (3) that the inadequate training is closely related to or actually caused his injury. *Plinton v. Cty. of Summit,* 540 F.3d 459, 464 (6th Cir. 2008). Thus, "the plaintiff must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury." *Slusher v. Carson*, 540 F.3d 449, 457 (6th Cir. 2008) (internal quotation marks and citations omitted).

In their memorandum in support of their motion for summary judgment, Defendants assert that the record establishes that Plaintiff's medical providers thought that he had a spider bite prior to his hospitalization and therefore state that they cannot be liable for any failure to train correctional officers arising out of the Union County Jail officers' failure to recognize the seriousness of Plaintiff's injury [Doc. 25 p. 17–18]. Plaintiff relies on the following facts to oppose this argument: (1) correctional officers did not send him to the hospital for thirty-five (35) days or provide him with supplies to properly clean and dress his wound after his return from the hospital; (2) Defendant Sheriff Breeding testified that officers must be certified through the TCI within one (1) year of their employment, that he trusts that jail officers get their training until someone tells him otherwise, and that he did not know where the sick call reports were kept at the jail; (3) a nurse was not always available at the jail, and Plaintiff testified that the nurse would "slip" him supplies for his

20

wound; and (4) the fact that other prisoners have previously filed lawsuits against Union County [Doc. 26 p. 11–14, 20–21].

However, Plaintiff has not presented any evidence from which a reasonable jury could find (1) that Defendant Union County provided inadequate training to officers with respect to recognizing a prisoners' need for medical care, (2) that Defendant Union County was aware of inadequate training of its correctional officers for this issue, or (3) that any such inadequate training caused any injury to him. Specifically, Plaintiff has not presented any proof regarding the training—or lack thereof—of any correctional officer that failed to recognize the seriousness of his medical issue. Thus, while it is undisputed that correctional officers must be certified within their first year of working for Defendant Union County, Plaintiff has presented no proof to connect this policy to any denial of adequate medical care to him. Moreover, Plaintiff again has not provided any information regarding prior lawsuits against Defendant Union County from which a reasonable juror could find that this Defendant had notice of the alleged lack of adequate training or supervision.

Thus, Defendants are entitled to summary judgment on this claim.

## C. Failure to Protect

In his complaint, Plaintiff also seeks to assert a claim for "failure to protect" against all Defendants arising out his allegations that these Defendants failed to protect him from the serious risks to his health posed by the condition of his leg and/or from cruel and unusual punishment in the form of placement in a one-man cell due to his infection after

his return to the jail on August 29, 2017 [Doc. 1 p. 22–23, 26–28]. However, to the extent that Plaintiff alleges that Defendants violated his rights under the Eighth Amendment due to their failure to protect him from the serious risks to his health, Plaintiff already set forth claims that Defendants violated his Eighth Amendment rights through deliberate indifference to his serious medical needs [*Id.* at 17–20, 22–24] that the Court addressed above. Thus, it appears that these claims are duplicative. Even if they were not, however, Plaintiff's "failure to protect" claim would be subject to dismissal for the same reasons as Plaintiff's claims alleging that he received inadequate medical care in violation of the Eighth Amendment, as set forth above.

Moreover, while Plaintiff alleged in his complaint that Defendants should be held liable for their failure to protect him from placement in a one-man cell after his return from the hospital on August 19, 2017, Plaintiff now states in his response to Defendants' motion for summary judgment that he should have been housed in a one-man cell the entire time that he was in the Union County Jail, that housing him with other inmates was "a significant risk to all inmate safety," and that he was exposed to an overflowing toilet during this time [Doc. 26 p. 15–16]. Thus, it is apparent that Plaintiff has abandoned his claim that his placement in the one-man cell after his return from the hospital violated his constitutional rights. To the extent that Plaintiff now seeks to bring claims for violation of the Eighth Amendment based on the fact that he was housed with other inmates in the Union County Jail with a toilet that overflowed, his response to Defendants' motion for summary judgment is not the proper place to do so.

22

Moreover, any such claims would be subject to dismissal as time-barred and/or for failure to state a claim upon which relief may be granted. District courts apply state statutes of limitations to § 1983 claims. *Harris v. United States*, 422 F.3d 322, 331 (6th Cir. 2005). Tennessee applies a one-year statute of limitations to § 1983 actions. *Zundel v. Holder*, 687 F.3d 271, 281 (6th Cir. 2012); Tenn. Code Ann. § 28-3-104(a)(3). According to his complaint, Plaintiff was no longer housed with other inmates in the Union County Jail upon his return from the hospital on August 29, 2017 [Doc. 1 p. 14]. However, Plaintiff did not seek to assert any claims arising out of his housing in the Union County Jail prior to August 29, 2017, until he filed his response in opposition to summary judgment on December 6, 2019 [Doc. 26]. Thus, these claims are clearly time barred, and the Court will not allow Plaintiff to amend his complaint to assert them. *Thiokol Corp. v. Mich. Dep't of Treasury*, 987 F.2d 376, 383 (6th Cir. 1993) (affirming district court's denial of a plaintiff's motion to amend his complaint to assert a claim that would be subject to dismissal, as the amendment would be futile).

Further, even if these claims were not time-barred, they would be subject to dismissal for failure to state a claim upon which relief may be granted. "[T]the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Accordingly, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). "Routine discomfort is

part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Thus, only "extreme deprivations" that deny a prisoner "'the minimal civilized measure of life's necessities" will establish that a prisoner's conditions of confinement violate the Eighth Amendment. *Id.* at 8–9 (citations and quotations omitted).

Prison authorities may not, however, "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). Accordingly, in examining claims alleging that the conditions of the plaintiff's confinement violate the Eighth Amendment, the court must determine whether the risk of which the plaintiff complains is "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Id*. at 36; *see also Rhodes*, 452 U.S. at 34.

Nothing in the record suggests that housing Plaintiff with other inmates while he had MRSA created a grave risk to Plaintiff, and he does not have standing to assert the rights of other prisoners. *Newsom v. Norris*, 88 F.2d 371, 381 (6th Cir. 1989) (holding that "a prisoner who initiates a civil action challenging certain conditions at a prison facility in his individual capacity is limited to asserting alleged violations of his own constitutional rights and . . . lacks standing to assert the constitutional rights of other prisoners"). Moreover, Plaintiff has not established that any named Defendant disregarded any risk to

Plaintiff from the overflowing toilet in his housing area, or that this overflowing toilet amounted to an extreme deprivation of a basic human need.

Accordingly, Defendants are entitled to summary judgment on Plaintiff's claims for failure to protect, and the Court will not allow Plaintiff to amend his complaint to assert new claims.

### D. Outrageous Conduct/Intentional Infliction of Emotional Distress

Plaintiff also asserts a state law claim for outrageous conduct/intentional infliction of emotional distress in his complaint against the individual Defendants [Doc. 1 p. 28–31]. To succeed on such a claim under Tennessee law, a plaintiff must show by competent evidence that the defendant's conduct was "(1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." *Rogers v. Louisville Land Co.*, 367 S.W.3d 196, 205 (Tenn. 2012).

In their motion for summary judgment, Defendants seek summary judgment on this claim based on, among other things, their assertion that Plaintiff has no proof that he has suffered any serious mental injury due to the acts alleged in the complaint [Doc. 25 p. 23–24]. In response, Plaintiff has not pointed to any evidence in the record that he has suffered a serious mental injury. Accordingly, no reasonable juror could find that Defendants are liable for this claim under Tennessee law and Defendants are entitled to summary judgment for this claim.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' motions for leave to file excess pages and for summary judgment [Docs. 23, 24] will be **GRANTED**, Plaintiff's claims against the Doe Defendants will be **DISMISSED**, and this action will be **DISMISSED**.

**AN APPROPRIATE JUDGMENT ORDER WILL ENTER.**

**ENTER:**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE